SOPHIE E. BAYLOR AND JAMES DAWSON v. SAN ANTONIO NATIONAL BANK.

Where a homestead has been dedicated under a former law, but has increased in value not to exceed the amount now reserved from forced sale under the Constitution of 1869, it will still be protected as a homestead.

APPEAL from Bexar. Tried below before the Hon. Geo. F. Noonan.

James Dawson executed his two notes, one of which matured on the fourteenth day of January, 1859, and the other on the first day of March, 1859. Suit was instituted on them, and property attached, February 21, 1861. Final judgment obtained April 1, 1868, and the property attached ordered to be sold.   After the execution of the notes, Dawson conveyed, by deed of gift, to his mother, Sophie E. Baylor, for life, the property attached, and she brought this suit to enjoin the sale of the attached premises, claiming them as her own.   Many issues were raised by the pleadings ; but as they were all settled by the verdict of the jury satisfactorily to the parties, it is unnecessary to refer to them.   This controversy arose on the entering of the decree by the court.

It was not denied that the homestead exemption should be allowed, but appellants contended it should be by the law in force at the rendering of the decree, June 15, 1873, while appellee insisted that it should be by the law in force at the time the contract was made.   To the latter view the court inclined, and the decree was so entered.

The verdict was as follows, viz.:

"We, the jury, find for the plaintiff, the homestead to consist of four acres, at three hundred dollars per acre ; improvements thereon valued at seven thousand dollars. We believe James Dawson not guilty of the intention to defraud his creditors."

On this verdict a decree was entered ordering the property to be sold, two thousand dollars of the proceeeds to be paid to Mrs. Baylor, and the excess to be applied to the payment of a judgment in the case of John H. French v. James Dawson, now owned, as the decree recites, by the San Antonio National Bank.

*Wælder & Upson*, for appellants.—The court erred in entering the decree and final judgment, for the reason

29

that it is contrary to law, contrary to the facts, and contrary to the verdict of the jury.

We think we are sustained by authority when we assume the ground that the exemption applicable here is the provision of the Constitution of 1869 (2 Vol. Pas. Dig., page 1124), exempting from forced sale any city lot or lots, not to exceed $5000 in value at the time of their destination as a homestead, and without reference to the value of any improvements thereon.

The claim of the exemption may be made available if, at the sale, the homestead right exists. The case of Stone v. Darnell, 20 Texas, 11, is clear upon this point. It was there decided that where, after the levy of an execution, the defendant in execution built a house on the land levied on and moved into it before the sale, the property was exempt from forced sale as a homestead.

In this case the injunction was sued out, and thus the claim to the exemption was asserted before any sale was attempted. This being so, we ask and answer in the language of Chief Justice Hemphill, in the case just cited (20 Texas, 14): "Was or was not the land or lots the homestead of the debtor at the time of the forced sale? If it was his homestead at that time, it seems incontrovertibly clear, under the Constitution, that it is not subject to forced sale." It follows as a corollary that if the claim can be asserted at the time of the sale it is available, according to the law then in existence. The time of sale in this case has not yet come. Being asserted, we submit that the law in force at the time of the rendition of the judgment of the District Court in this case is the law which should have governed the decision; and that law was the constitutional provision of 1869.

In the case of Woods v. Wheeler, 7 Texas, 13, debts were contracted in 1845, prior to the adoption of the Constitution of 1846. Although the court decreed a sale of

the homestead, yet it directs a distribution of the proceeds of an estate in accordance with the constitutional provision; that is to say, this court decreed the benefits of the homestead exemption as against creditors, although it had no existence at the time the debts were contracted. Texas is not alone in her liberality of construction upon this subject.    Other States, having similar provisions of law, have been equally liberal.

Thus the Supreme Court of Ohio has said that the proper time for the assertion of the debtor's claim under the statute, to have such homestead exempted from sale, is when the sheriff or other officer is about to execute the writ of execution or order of sale; and the claim is available as well against decretal orders of sale as against executions founded on judgments at law.    (Sears v. Hawks, 14 Ohio, N. S., 298.)

In Kansas a judgment rendered prior to the adoption of the Constitution cannot be levied upon the homestead of the debtor, which is exempted from execution under Section 9, Article 15.    (Cusic v. Douglas, 3 Kan., 123; Root v. McGrew, Ib., 215.)

In Georgia the adjudications since the adoption of its Constitution of 1868 are to the effect that the homestead provision of the Constitution is retroactive, and applies to judgments, executions and decrees founded on debts contracted before its adoption, even though reduced to judgment before that time, unless they fall within the exceptions provided for in the Constitution.    Pulliam *et al.* v. Sewell *et al.*, 40 Georgia, in which the court say that a homestead is not subject to the payment of a judgment obtained prior to the passage of the homestead law.

In North Carolina it has been held that the homestead and exemption laws apply to debts existing before the adoption of the Constitution of 1868 (providing exemp-

tions); debts not being a lien upon the property of the debtor. (Hill v. Kesler, 63 N. C., 427.)

The decisions here referred to are deduced, no doubt, from the settled and generally understood principle that laws of the character of the one under consideration properly belong to the remedy.

Judge Cooley, in his work on Constitutional Limitations, holds this language : "Nor is there any constitutional objection to those laws, which except certain portions of a debtor's property from execution, being so modified as to increase the exemptions, and the modifications made applicable to contracts previously entered into.     *     *     *     *     *     *

"Regulations of this description have always been considered, in every civilized country, as properly belonging to the remedy." (Cooley's Const. Lim., 287; Bronson v. Kinzie *et al.*, 1 How, 315.)

"Thus, a law abolishing distress for rent has been sustained as applicable to leases in force at its passage." (Cooley's Lim., 288, referring to Van Renselaer v. Snyder, 9 Barb., 302 ; and 13 N. Y., 299; Guild v. Rogers, 8 Barb., 502 ; Conkey v. Hart, 14 N. Y., 22.)

"Does any one doubt that a State Legislature may abolish imprisonment for debt as well on past as future contracts ?" as per Justice McLane, in Bronson v. Kinzie *et al.*. 1 How, 328.

"Without impairing the obligation of the contract, the remedy may certainly be modified, as the wisdom of the nation shall direct." (Sturges v. Crowninshield, 4 Wheat., 200.)

In considering the effect of laws upon contracts made prior to their enactment, Justice Parsons says : "It is admitted that a State may make partial exemptions of property, as of furniture, food, apparel, or even a homestead." (2 Pars. Cont., 534.)

It is held in Michigan that property may be exempted from execution for debts contracted before the law of exemption was enacted. (Rockwell v. Hubbell, 2 Doug., 38.)

Judge Cooley lays it down as a principle, that exemptions of property from executions are always subject to be recalled by the Legislature. (Const. Lim., 383.) Upon the same principle, as we have already seen, they may be modified, extended, enlarged; and the modification may be made available up to the very time when the forced-sale is about to be made. And if, for any reason, a sale should be postponed, and between the postponement and subsequent time of sale any change in the exemption laws should be made, we see no reason why such change should not inure to the debtor or creditor, as the case may be. The principle seems the same throughout.

*S. G. Newton*, for appellee.

Walker, J.—The only question presented by this record, for our consideration, is, whether the law in force in 1857, touching the homestead exemption, or that now in force, should govern the decision of the case.

James Dawson purchased the property in April, 1857, improved and occupied it as a homestead for himself, his mother, the appellant, and her family, and she continues to occupy it for that purpose.

Dawson gave the notes, on which suit is brought, to French and Favor between one and two years subsequent to the purchase of the property from the Vances; and there does not appear that these notes have any connection whatever with the purchase of the property in controversy.

Dawson deeded the property to his mother on the twelfth of March, 1860; the consideration was natural love and affection. Had the jury found that this deed was made in fraud of the rights of creditors, a much more

serious question than any presented in the record would have been met; but the jury say, "We believe James Dawson not guilty of the intention to defraud his creditors."

This finding is decisive of the whole case.

If Mrs. Baylor took the property relieved of any fraud in the conveyance, then it is not liable for James Dawson's debts, though no attribute of homestead attached to it.

But the parties raise another question upon which they invoke the decision of the court, and we have no hesitation in deciding that this homestead, and all others, are to be protected by the law as it now stands. The Constitution of 1869 fixes the amount and value of the homestead exemption, and it will govern all cases where the homestead has not been set apart under any other law; or, in other words, where a homestead has been dedicated under former law, but has increased in value not to exceed the amount now reserved from forced sale under the Constitution of 1869, it will still be protected as a homestead.

The controversy here arose on entering the decree. The decree should have given the appellant the property, and such is the judgment of this court.

REVERSED AND RENDERED.